2000-NMCA-003

993 P.2d 751

**G & G SERVICES, INC.,**
**Plaintiff–Appellee,**

v.

**AGORA SYNDICATE, INC.,**
**Defendant–Appellant.**

**No. 19,551.**

Court of Appeals of New Mexico.

Nov. 2, 1999.

Certiorari Denied, No. 26,116,
Jan. 10, 2000.

Steven Vogel, Albuquerque, David A. Archuleta, Albuquerque, Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Appellee.

Thomas L. Kalm, Kalm Law Office, P.C., Albuquerque, Emily A. Franke, Butt, Thornton & Baehr, P.C., Albuquerque, for Appellant.

## OPINION

DONNELLY, Judge.

{1} In this case we examine the parameters of an insurer's duty to investigate and defend a third-party claim filed against its insured, together with several related issues. Agora Syndicate, Inc. (Agora) appeals from a jury verdict in favor of its insured, G & G Services (G & G), a partnership. The jury returned a verdict for G & G on its claims alleging breach of the insurance contract, insurance bad faith, violation of the New Mexico Insurance Code, NMSA 1978, § 59A–16–20 (1984), and violation of the New Mexico Unfair Practices Act, NMSA 1978, § 57–12–2(D) (1989).

{2} Agora argues that (1) there was reversible error in the jury instructions, (2) the jury verdict was not supported by substantial evidence, (3) the trial court erred in awarding statutory treble damages, (4) the trial court improperly excluded evidence, and (5) the award of attorney fees was excessive. For the reasons discussed herein, we affirm.

## FACTUAL AND PROCEDURAL POSTURE

{3} Gary Humphrey and Geoffrey Breidenbach were partners in G & G, a contracting and construction firm. In March 1992, G & G purchased a commercial general liability insurance policy from Agora through an independent agent, Fred Carbajal. Agora is an excess surplus lines insurance carrier specializing in difficult-to-insure risks. Agora agreed in the policy to

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

The policy did not cover property damage caused by G & G's own work product but did cover damages arising out of work performed on G & G's behalf by a subcontractor. G & G did not make the subsequent premium payment, and Agora cancelled the policy for non-payment, effective September 6, 1992.

{4} On August 18, 1992, prior to cancellation of the policy, G & G contracted with Howard Herbert to re-roof his Albuquerque residence. G & G hired A–Bran, a subcontractor, to perform the re-roofing work. A–Bran worked on the roof August 27 and 28, 1992, but failed to show up August 29, 1992. When Herbert called G & G on August 29, 1992, to complain that his roof was leaking, G & G placed tarps and plastic on the roof in an effort to temporarily secure it until it could be finished. G & G then made arrangements with another roofer to finish the work, which was completed on September 4.

{5} Herbert again complained of leaks on September 13 and October 28, 1992. Each time it received a complaint, G & G made arrangements for someone to identify and attempt to fix the problem. In January 1993, it paid for interior damages Herbert said were caused by the roof leaks by deducting the sums from money Herbert owed G & G for different work. G & G tried unsuccessfully to contact Herbert to arrange a time to perform further dry wall repair, but

heard nothing further until it received a letter from him in August 1993 demanding his money back and stating that his roof had continued to leak. Herbert filed suit in Metropolitan Court against G & G on February 23, 1994. The complaint alleged that he signed a contract with G & G for roofing work on his home on August 18, 1992, that the work was completed on September 4, 1992, and that the roof began to leak on November 1, 1992.

{6} G & G contacted Carbajal shortly after Herbert initially complained to G & G that his roof was leaking on August 29, 1992, to alert him to a possible claim. After G & G received Herbert's demand in August 1993 it again contacted Carbajal to relay this information. On October 26, 1993, Carbajal filled out a general liability loss notice on behalf of G & G. This notice listed the date of loss as August 18, 1992.

{7} When Agora received the loss notice form filled out by Carbajal in early January of 1994, it assigned an independent Albuquerque insurance adjuster, Paulette Stevenson, to investigate the claim and to determine if the insurer for A–Bran would accept responsibility. This effort proved unsuccessful because A–Bran's insurance policy did not cover this type of claim.

{8} Stevenson requested documentation from G & G several times beginning in January 1994, but did not talk with Herbert or with any of the roofing subcontractors. Nor did anyone else contact them on behalf of Agora. Even though there was some indication that A–Bran's work may have been the source of the problem, Stevenson did not interview Humphrey or Breidenbach. She did talk with Breidenbach later, however, when he called her on March 28, 1994, to discuss matters regarding Herbert's claim. G & G sent Stevenson documentation on March 11, 1994, including the contracts between G & G and Herbert and between G & G and A–Bran.

{9} Herbert's complaint was served on G & G on March 19, 1994. Agora received a copy on March 24. On March 29, 1994, Agora sent G & G a letter denying coverage and denying a defense on the grounds that

the loss date of November 1, 1992, as alleged in Herbert's complaint, was outside of the coverage provided by the policy. Breidenbach wrote Agora requesting it to reconsider on March 30, 1994. At that time Agora had nothing in its file indicating the date of the alleged loss may have been August 18, 1994. Thereafter, Agora sent a second letter reiterating its position, that the loss was outside the terms of the policy's coverage.

{10} Following a trial in June 1995 in metropolitan court, judgment was entered in favor of Herbert and against G & G. G & G paid off the judgment over time with interest, and paid an attorney to represent it against Herbert.

{11} G & G's attorney sent another letter to Agora in November 1995, advising it that the loss date was alleged to have been August 29, 1992. Shortly afterwards Agora received affidavits signed by Breidenbach and Herbert stating the roof first leaked on August 29, 1992. Agora reviewed the entire court file on the Herbert lawsuit and found no mention of an August 29 loss date. It also checked with the National Weather Bureau in an attempt to ascertain whether it had rained in Albuquerque on August 29, 1992, and it again denied G & G's claim.

{12} After Agora denied responsibility for the claim, G & G filed suit against Agora on March 13, 1996. G & G's claim against Agora was tried to a jury which rendered a special verdict against Agora separately on each of the four counts of G & G's complaint.

## DISCUSSION

### A. Jury Instructions

{13} Agora asserts that the trial court erred in giving jury instructions that were inapplicable to the case and injected false issues into the case. Specifically, it contends that language concerning its alleged failure to settle the claim and language taken from jury instructions for which the title and use notes indicate are for first party claims, UJI 13–1702 and 13–1712 NMRA 1999, constitute reversible error.

{14} In preparing the record for appeal, neither Agora nor the trial court was able to locate copies of the instructions in question and no record was made of the wording of the instructions when the trial court read the instructions to the jury. The only instruction contained in the record proper is the statement-of-plaintiff's-claims instruction, which is attached to a post-trial motion. G & G asserts that Agora failed to provide an adequate record sufficient to permit this Court to review the issues raised concerning the propriety of the instructions on appeal. Agora, citing *Bachicha v. Lewis,* 105 N.M. 726, 728, 737 P.2d 85, 87 (Ct.App.1987), and *Trujillo v. Baldonado,* 95 N.M. 321, 322, 621 P.2d 1133, 1134 (Ct.App.1980), contends that the transcript of the instruction conference in conjunction with Volume 3 of the New Mexico Rules Annotated are sufficient to review this issue.

{15} Under the particular facts of this case, we agree with G & G. *Bachicha* and *Trujillo* involved a simple instruction and a transcript that clearly indicated what the trial court gave. This case, on the other hand, involves complicated and lengthy instructions that involve multiple paragraphs; a jury instruction conference that is confusing and lengthy; and modifications that were made to the uniform instructions that may or may not have been given.

{16} Although we do not adopt or apply it in the present case, we note the existence of case law from other jurisdictions that could permit the giving of instructions similar to the instructions complained of here. *See Austero v. National Cas. Co.,* 84 Cal. App.3d 1, 148 Cal.Rptr. 653, 671 (1978) (indicating that a denial of coverage necessarily projects a refusal to accept reasonable settlement offers), *overruled on other grounds by Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 149 n. 7 (1979) (in banc); *McCormick v. Sentinel Life Ins. Co.,* 153 Cal.App.3d 1030, 200 Cal.Rptr. 732, 738 (1984) (indicating that the duty of insurers in first party claims can be merely different aspects of the same duty as is present in third party claims). Because we are unable to ascertain with certainty in this case the language of the instructions in question and how they were presented to the jury, we are hampered in our review of this issue.

{17} It is the general rule that we consider the instructions as a whole and review the challenged instructions to determine whether they correctly state the law and are based on the evidence. *See Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 727, 688 P.2d 333, 337 (Ct.App.1984). It is also the general rule that an appellate court will decline to review claims of error regarding jury instructions if the instructions are not contained in the record on appeal. *See Jones v. Beavers*, 116 N.M. 634, 640, 866 P.2d 362, 368 (Ct.App.1993) (stating that where record is incomplete or doubtful, reviewing court indulges in every presumption in favor of correctness of decision below). The record does not reflect that Agora sought to supplement or recreate the record or transcript pursuant to the avenues available to it under our rules. *See* Rule 12–209(C) NMRA 1999 (correction or modification of record proper); Rule 12–211(I) NMRA 1999 (stipulated transcript of proceedings); Rule 12–211(H) (procedure when transcript is unavailable). Under these circumstances, we decline to reach Agora's issues regarding the propriety of the trial court's instructions.

### B. *Substantial Evidence*

### 1. *Duty to Defend*

{18} Next, Agora maintains that the jury's verdicts finding that it breached the insurance contract, acted in bad faith, violated the Insurance Code, and violated the Unfair Practices Act should be reversed because such findings were not supported by substantial evidence. Agora asserts it acted properly in determining whether it had a duty to defend, based on the allegations in the complaint and facts known to it at the time. It points to evidence in the record indicating that the first time it learned of a different date of loss other than that stated in Herbert's complaint was approximately five months after judgment had been entered against G & G in the metropolitan court case. Thus, it argues it cannot reasonably be deemed to have breached any duty to defend G & G in that case. In support of this argument, Agora relies, in part, on *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 114 N.M. 695, 697, 845 P.2d 789,

791 (1992) (the duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy; where policy limited coverage to occurrences within policy period, insurer had no duty to defend or indemnify suit based on occurrences not within policy period), and *American General Fire & Casualty Co. v. Progressive Casualty Co.*, 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990) ("The duty of an insurer to defend arises from the allegations on the face of the complaint *or* from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage.") (emphasis added). Agora argues in effect that an insurer has no duty to independently investigate the underlying factual basis of a lawsuit against its insured before determining whether it has a duty to defend its insured in that lawsuit. We find this argument unpersuasive.

{19} Agora correctly notes that opinions of our Supreme Court and of this Court enunciate the rule that "[w]hether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy." *Lopez v. New Mexico Pub. Sch. Ins. Auth.*, 117 N.M. 207, 209, 870 P.2d 745, 747 (1994) (citing *American Employers' Ins. Co. v. Continental Cas. Co.*, 85 N.M. 346, 348, 512 P.2d 674, 676 (1973) (duty to defend ascertained by comparing allegations in complaint to policy coverage)); *see, e.g., Bernalillo County Deputy Sheriffs Ass'n*, 114 N.M. at 697, 845 P.2d at 791 (citing *Insurance Co. v. Wylie Corp.*, 105 N.M. 406, 409, 733 P.2d 854, 857 (1987)); *Marshall v. Providence Wash. Ins. Co.*, 1997–NMCA–121, ¶ 12, 124 N.M. 381, 951 P.2d 76 (duty to defend is determined by comparing the allegations in the complaint to the coverage of the policy).

{20} None of the cases relied upon by Agora, however, involved the situation presented here, where the insured provided the insurer with other facts and information indicating that the third-party claim may come within the terms of the policy provisions. "[C]ases are not authority for propositions not considered." *Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993)

(internal quotation marks and citations omitted).

{21} Our Supreme Court has declined to narrowly limit the duty of an insurer to defend its insured against suits brought by a third party to those situations which are only set forth in the allegations of a complaint. Instead, facts other than those set forth in the complaint may also implicate an insurer's duty to defend. For example, in *American General Fire & Casualty Co.*, 110 N.M. at 744, 799 P.2d at 1116, our Supreme Court held that "[t]he duty of an insurer to defend arises from the allegations on the face of the complaint *or from the known but unpleaded factual basis of the claim* that brings it arguably within the scope of coverage." (Emphasis added.) *See also Hardware Mutual Cas. Co. v. Hilderbrandt*, 119 F.2d 291, 299 (10th Cir.1941) (holding that insurer was informed of facts that would have brought the claim within policy coverage, even though there appeared to be no coverage based on the allegations of the complaint).

{22} Courts in other jurisdictions which have considered similar issues have differed as to the amount of investigation an insurer is required to undertake when presented with a demand by an insured to provide a defense. In *Trinity Universal Insurance Co. v. Cowan*, 945 S.W.2d 819 (Tex.1997), the court observed that "an insurer is entitled to rely solely on the factual allegations contained in the petition in conjunction with the terms of the policy to determine whether it has a duty to defend. The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit.'" *Id.* at 829 (quoting *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.Ct. App.1990)). A second view, however, as stated in *Colonial Oil Industries v. Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671*, 268 Ga. 561, 491 S.E.2d 337 (1997), holds that "[w]hen the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage[,] ... [t]he requirement that an insurer base its decision on true facts will necessitate that the insurer conduct a reason-

able investigation into its insured's contentions." *Id.* at 338–39 (citations and footnote omitted). A third view, followed by some courts, holds that an insurer must actively seek information before determining whether it has a duty to defend. *See, e.g., Mapes Indus., Inc. v. United States Fidelity & Guar. Co.*, 252 Neb. 154, 560 N.W.2d 814, 817 (1997) ("[I]n determining its duty to defend, an insurer not only must look to the petition, but must investigate and ascertain the relevant facts from all available sources."); *see also* 7C John Alan Appleman, *Insurance Law and Practice* § 4684.01, at 95–96 (Rev. Vol. by Walter F. Berdal 1979 & Cum.Supp. 1999).

{23} We decline to adopt what appears to be a sweeping duty to investigate, regardless of the circumstances, as suggested by the court in *Mapes*. Instead, considering the relevant case law, together with our Supreme Court's jury instructions, we conclude that an insurance company is required to conduct such an investigation into the facts and circumstances underlying the complaint against its insured as is reasonable given the factual information provided by the insured or provided by the circumstances surrounding the claim in order to determine whether it has a duty to defend. For example, in Section 59A–16–20(C), our New Mexico Legislature included "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims under policies" in a list of prohibited unfair insurance claims practices. Although a federal court has interpreted this statute to require investigation only of "first-party claims, and not demands for defense against third-party claims," *Valley Improvement Ass'n v. United States Fidelity & Guar. Corp.*, 129 F.3d 1108, 1123 (10th Cir. 1997), no New Mexico court has yet had occasion to rule whether an insurer has a duty to conduct its own investigation in response to a demand for a defense from its insured. We see nothing in the statute that limits the duty to investigate only to first-party claims. *See Sims v. Sims*, 1996–NMSC–078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (holding that the plain meaning rule requires a court to give effect to the statute's language and refrain from further interpreta-

tion when the language is clear and unambiguous).

{24} Moreover, we believe the jury instructions promulgated by our Supreme Court discuss the duty of an insurer to investigate demands by an insured to provide a defense. *See* UJI 13–1703 NMRA 1999 ("A liability insurance company must act reasonably under the circumstances to conduct a timely investigation and fair evaluation of its duty to defend."). Thus, we hold that UJI 13–1703 requires the insurer to conduct such inquiry as is reasonable under the circumstances. Nothing in UJI 13–1703 indicates that such inquiry is limited solely to the allegations set forth in a third-party complaint.

{25} The court in *Milliken v. Fidelity & Casualty Co.*, 338 F.2d 35 (10th Cir.1964), explained the rationale for requiring a reasonable duty to investigate, noting:

> The Supreme Court has said that the Federal Rules of Civil Procedure permit "notice pleading" and the Rules "... do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim'"
>
> ....
>
> This Court has consistently held that as a general rule the duty of an insurer to defend its insured in federal court litigation is determined in the beginning of the litigation by the coverage afforded by the policy, as compared with the allegations of the complaint filed in the action. But, the allegations of the complaint are not conclusive on the issue. The duty to defend may attach at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage. The reason for this rule is that "... [u]nder the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties...." Thus, the insurer's duty to defend an action brought in federal court against its insured may arise or attach at any stage in the litigation. And the duty does attach where there are facts, extrane-

ous to the allegations of the pleadings, which, if proved, make out a case against the insurer that is covered by the policy and which either are actually brought to the insurer's attention or could have been discovered by it through a reasonable investigation.

338 F.2d at 40 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and *Harbin v. Assurance Co.*, 308 F.2d 748, 750 (10th Cir.1962) (footnotes omitted)).

{26} We find the reasoning of *Milliken* persuasive. "The New Mexico Rules of Civil Procedure are modeled after the federal rules...." *First Nat'l Bank in Albuquerque v. Sanchez*, 112 N.M. 317, 319–20, 815 P.2d 613, 615–16 (1991). "New Mexico adheres to the broad purposes of the Rules of Civil Procedure and construes the rules liberally, particularly as they apply to pleading." *Las Luminarias of N.M. Council of the Blind v. Isengard*, 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct.App.1978). "Cases decided under the federal rule are often persuasive to this Court if they are not in conflict with controlling New Mexico authority and are based on sound logic and policies consistent with the law of this state." *Gallegos v. Southwest Community Health Servs.*, 117 N.M. 481, 489, 872 P.2d 899, 907 (Ct.App.1994).

{27} An insurance company "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable.... In light of the ... plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 176 (1966) (en banc). In *American Employers' Insurance Co. v. Crawford*, 87 N.M. 375, 380, 533 P.2d 1203, 1208 (1975), our Supreme Court cited *Gray* with approval in discussing the duty of an insurer to defend.

{28} Moreover, we think the rationale applied by the court in *Gray* is consistent with the reasonable expectations of the insured. *See Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989) ("The reasonable expectations of the insured ... provide the criteria for examining an insur-

ance contract on the basis both of the actual words used and of unresolved issues that the insurance company has an obligation to address."). One of the basic reasons for purchasing liability insurance is to relieve the insured of the cost of litigation. *See Gray*, 54 Cal.Rptr. 104, 419 P.2d at 178. In purchasing insurance an insured may

> reasonably expect that he would stand a better chance of vindication if supported by the resources and expertise of his insurer than if compelled to handle and finance the presentation of his case. He would, moreover, expect to be able to avoid the time, uncertainty and capital outlay in finding and retaining an attorney of his own.

*Id.*

■ {29} Thus, we conclude that the better reasoned cases indicate that an insurance company presented with a demand for a defense from its insured "must act reasonably under the circumstances to conduct a timely investigation and fair evaluation of its duty to defend." UJI 13–1703. If a reasonable investigation would include seeking information from other sources apart from the complaint, the insurer should seek such information. *Accord Blackburn v. Fidelity & Deposit Co.*, 667 So.2d 661, 668 (Ala.1995) ("[A]s to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured."); *National Indem. Co. v. Flesher*, 469 P.2d 360, 366 (Alaska 1970) (holding that insurer has a duty to "defend when the suit alleges facts within an exception to the policy but the true facts are within, or potentially within, the policy coverage and are known or reasonably ascertainable to the insurer"); *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403, 407 (1973) (adopting the rule in *Milliken* that "an insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend"); *see also Monroe Guar. Ins. Co. v. Monroe*, 677 N.E.2d 620, 624 (Ind.Ct.App. 1997); *Koski v. Allstate Ins. Co.*, 456 Mich.

439, 572 N.W.2d 636, 639 n. 5 (1998); *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555, 557–58 (1984); *First Bank of Turley v. Fidelity & Deposit Ins. Co.*, 928 P.2d 298, 303–04 (Okla. 1996).

### 2. *Verdict on Liability*

{30} In addition to its prior arguments, Agora asserts that it had no duty to defend because the evidence was uncontroverted that it did not know there were allegations that the roof began to leak on August 29, 1992, during the period of the policy coverage, until November of 1995, months after judgment had been entered against G & G in metropolitan court. It emphasizes that the claim form submitted by G & G listed the loss date of August 18, 1992, which was later found to be the date G & G signed the contract to do the work, not the date the roof began to leak. It also points out that Herbert's complaint alleged that the loss occurred on or about November 1, 1992, well after the policy was cancelled for non-payment of premium on September 6, 1992. However, it ignores evidence that Herbert complained to G & G about a leaking roof on August 29, and G & G in turn notified Carbajal of the potential liability on the policy shortly thereafter.

{31} When a jury verdict is challenged on appeal, we review all disputed facts and indulge in all reasonable inferences in favor of the prevailing party. *See Page & Wirtz Constr. Co. v. Solomon*, 110 N.M. 206, 209, 794 P.2d 349, 352 (1990). We will only reverse a jury verdict if it is unsupported by substantial evidence. *See id.* "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sunwest Bank v. Colucci*, 117 N.M. 373, 375, 872 P.2d 346, 348 (1994). In reviewing a substantial evidence claim, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached ." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177.

{32} As discussed above, an insurer's duty to defend in New Mexico is based on the facts which it knew or would have known if it had conducted a reasonable investigation at the time the demand for a defense was made. There was evidence that no one on behalf of Agora spoke to Herbert or to the roofing subcontractors employed by G & G prior to the time Agora denied a defense, and that Agora continued to deny any responsibility to defend even after it was presented with evidence that the loss purportedly occurred within the policy period. Indeed, the only actions Agora took in connection with this claim were to attempt to get the subcontractor's insurance to pay and then to look for a specific date of August 29, 1992, in its file and to ascertain that it was not raining in one part of Albuquerque on August 29. Under these circumstances, we conclude that it was the jury's responsibility to decide if Agora acted reasonably. The jury could reasonably determine from these facts that Agora had breached its contract to provide a defense for G & G, violated the Insurance Code by failing to adopt reasonable standards for the prompt investigation and processing of G & G's claims arising under the policies and by failing to promptly provide G & G with a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim, and that Agora violated the Unfair Practices Act by failing to deliver the quality or quantity of goods contracted for.

{33} Nor do we believe the fact that evidence in the trial in the metropolitan court between Herbert and G & G did not conclusively establish when the leak began, or that Herbert testified that some of the work on his roof was done not by G & G's subcontractors, but instead was done by G & G itself, absolved Agora from liability herein. The relevant factor is whether there were facts which arguably brought Herbert's complaint within the policy coverage and gave rise to an obligation on Agora's part to defend. *See Price*, 101 N.M. at 442, 684 P.2d at 528 ("The test is not the ultimate liability of the insurance company.... [A]ny doubt about whether the allegations are within policy coverage is resolved in the insured's favor." (citations omitted)).

{34} We hold there was sufficient evidence to sustain the jury's verdict that Agora breached its contract and violated the Insurance Code and the Unfair Practices Act.

### 3. *Damage Award*

{35} Agora also challenges the jury's award of damages in the amount of $63,700 arguing that the verdict is not supported by substantial evidence. Agora does not dispute that G & G paid approximately $13,700 to Herbert to satisfy the judgment and to its attorneys for its defense in the Herbert lawsuit. It argues, however, that there is no evidence in the record to support the remaining $50,000 of the damages award.

{36} The controversy involving this issue centers around G & G's claims of lost profits. There was testimony that G & G had income of $71,609 in 1993, $136,510 in 1994, a similar amount in 1995, and $54,334 in 1996. Humphrey and Breidenbach, the G & G partners, testified that they believed the 1996 decline in income was due to G & G's inability to obtain a bond and to bid on governmental construction projects during the period that the metropolitan court judgment in favor of Herbert remained unsatisfied.

{37} Agora contends that G & G could not have bid on government jobs without a GB–98 license, that it only had a GB–2 license, and thus it could not possibly have lost income due to an inability to bid on contracts which could not legally have been awarded to it. Agora, however has not provided us with a citation to the record indicating where this argument was preserved below. Thus, we do not consider it. *See Wilburn v. Stewart*, 110 N.M. 268, 272, 794 P.2d 1197, 1201(990) ("Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed ... on appeal."); *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992) ("This court will not search the record to find evidence to support an appellant's claims.").

{38} The testimony of Humphrey and Breidenbach constituted evidence upon which the jury could properly determine that an adequate basis existed to find that at least $50,000 of the decline in income of $82,175

from 1995 to 1996 was due to G & G's inability to qualify for bonds to bid on government projects resulting from the outstanding judgment obtained by Herbert.

### C. Treble Damages

{39} Next, Agora maintains that the trial court incorrectly awarded treble damages to G & G for Agora's violation of the Unfair Practices Act. The trial court's award of treble damages under NMSA 1978, § 57–12–10(B) (1987), is a question of law which we review de novo. *See Gallegos v. New Mexico Board of Educ.*, 1997–NMCA–040, ¶ 11, 123 N.M. 362, 940 P.2d 468.

{40} Agora argues that the jury verdict was inconsistent because it found that Agora willfully violated the Unfair Practices Act, but did not willfully breach the insurance contract or act in bad faith. Treble damages may be awarded by the court against a party if the trier of fact finds the party acted "willfully." Section 57–12–10(B). Agora insists that such a finding must be explicit, and that the jury's verdict is inconsistent. The same conduct giving rise to G & G's claim for punitive damages also supports its claim for violation of the Unfair Practices Act. *Cf. Hale v. Basin Motor Co.*, 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990) (if same conduct could provide basis for award of punitive damages under Unfair Practices Act or under common-law fraud, plaintiff would then be required to elect remedies). Agora questions how the same conduct could be found to be willful for one claim but not for another.

{41} In considering this issue, we note that Agora admitted at oral argument that it did not bring this issue to the attention of the trial court before the jury was dismissed. A litigant who fails to object to an alleged inconsistency in a jury's verdict before the jury is dismissed may be held to have waived any further challenge to the alleged inconsistency. Thus, we conclude that Agora thus waived any challenge it might otherwise have made to the inconsistency of the verdict. *See Nelson v. Progressive Corp.*, 976 P.2d 859, 863 (Alaska 1999) ("[A] litigant waives his right to challenge the consistency of a jury's verdict if he fails to raise the issue and move for resubmission prior to the jury's discharge."); *Gonzalez v. Gonzalez*, 181 Ariz. 32, 887 P.2d 562, 565 (Ariz.Ct.App.1994) (party who failed to timely challenge inconsistency in jury verdict waived right to challenge verdict); *C.G. Chase Constr. Co. v. Colon*, 725 So.2d 1144, 1145 (Fla.Dist.Ct.App.1998) ("[A]n inconsistent verdict must be objected to at trial or the claim has been waived for appellate review."); *see also Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 962 P.2d 596, 603 (1998); *Boers v. Payline Sys., Inc.*, 141 Or. App. 238, 918 P.2d 432, 438 (1996).

{42} We hold that Agora waived any right to challenge the alleged inconsistency of the verdict by failing to bring the matter to the trial court's attention before the jury was discharged.

### D. Evidence

{43} Next, Agora argues that the trial court erred in excluding evidence in the form of the complaint filed by Herbert against G & G in metropolitan court and in limiting the testimony of experts Edward Casados and Kenneth Moore. We review the admission or exclusion of evidence for abuse of discretion. *See Coates v. Wal–Mart Stores, Inc.*, 1999–NMSC–013, ¶ 36, 127 N.M. 47, 976 P.2d 999.

{44} Agora maintains that the trial court erred in denying its request to admit Herbert's complaint as an exhibit and that it wished to demonstrate to the jury that the occurrence date alleged in the Herbert complaint was November 1, 1992, when the policy was no longer in effect. It relies on *Lopez*, 117 N.M. at 209, 870 P.2d at 747, for the proposition that an insurer's duty to defend is determined by comparing the allegations in the complaint with the provisions of the policy.

{45} As discussed above, we believe that *Lopez* is distinguishable from the facts existing here. We agree with Agora that the occurrence date in the complaint is relevant for the jury to consider; however, relevant evidence may be excluded if its probative value is outweighed by its prejudicial effect, the likelihood that it might confuse the jury, or the evidence is merely cumulative.

Rule 11–403 NMRA 1999. The Herbert complaint also contained allegations of wrongdoing by G & G which were not relevant to G & G's lawsuit against Agora. Moreover, the jury heard numerous times that the date of the leak identified in the Herbert complaint was November 1, 1992. Thus, evidence of the date identified in the complaint was cumulative at best. Therefore, we find no error in the trial court's ruling denying admission of the complaint.

{46} Agora also complains that the trial court improperly limited the testimony of its expert witness Edward Casados. The trial court ruled that Casados, an attorney, could testify about insurance industry standards and practices but that he would not be allowed to testify generally concerning insurance law. The trial court did not abuse its discretion in so ruling. "[O]pinion testimony that seeks to state a legal conclusion is inadmissible." *State v. Clifford,* 117 N.M. 508, 513, 873 P.2d 254, 259 (1994).

{47} Agora relies on *Herrera v. Fluor Utah, Inc.,* 89 N.M. 245, 248–49, 550 P.2d 144, 147–48 (Ct.App.1976), for the proposition that opinion testimony within a witness's expertise is not inadmissible because it contains a legal opinion. The witness in *Herrera* was a physician who gave an opinion as to whether the plaintiff had an occupational disease and what the proximate cause of that disease was, as those terms were used in the relevant statutes. *See id.* The witness was required to use his non-legal expertise in answering the question. *See id. Herrera* does not stand for the proposition that a witness may be permitted to usurp the province of the court by expounding on New Mexico statutes, case law, and relevant jury instructions.

{48} Agora also relies on *Russell v. Russell,* 111 N.M. 23, 25, 801 P.2d 93, 95 (Ct.App. 1990), for the proposition that "New Mexico law does not prohibit presentation of expert testimony on insurance law." We think Agora's reliance in this regard is misplaced. At trial, in *Russell* "the parties, the attorney for Procter & Gamble, a personal injury expert, and a subrogation expert testified." *Id.* The propriety of such testimony was not an issue

on appeal and was not addressed by the Court.

{49} Agora also objects to what it characterizes as the trial court's refusal to allow Kenneth Moore, an insurance adjuster, to state his opinion concerning whether he believed Agora had acted in bad faith. At the close of testimony on April 1, 1998, Agora's counsel asked Moore whether he thought Agora had acted in bad faith by failing to defend G & G and in refusing to pay for the new roof. G & G objected on the grounds that Agora had not identified Moore as an expert in the area of bad faith litigation. The trial court did not rule on the objection. The following morning when trial resumed, Agora did not seek a ruling from the court on the admissibility of Moore's testimony, nor did defense counsel seek to again elicit an opinion from the witness on the question of whether Agora had acted in bad faith. Under these circumstances, we hold that Agora failed to preserve the issue of the propriety of Moore's offering an opinion on bad faith. "No ruling of the trial court having been invoked on this issue, it is not before us for review." *Somerstein v. Gutierrez,* 85 N.M. 130, 132, 509 P.2d 897, 899 (Ct.App.1973).

{50} Agora further asserts that G & G's insurance expert Garth Allen, an attorney, was allowed to "testify to the same legal conclusions the Court prohibited Edward Casados and Kenneth Moore from testifying to." Allen's testimony was presented as "the definition and understanding of insurance bad faith in the insurance industry" and was allowed by the trial court specifically in that limited area. Our review of the record indicates that Moore was in fact permitted by the trial court to state his opinion concerning whether there was "any standard or rule of law in New Mexico violated by Agora with ... respect to the position [it] took in the handling of this claim presented by G & G?" The witness indicated there had been no violation. For that reason, even if we assume the question asked was improper because it may have led to an inadmissible response, it was harmless error because Agora was not harmed by the response. Thus, we disagree that Allen was allowed to testify on matters forbidden to Casados and Moore,

and hold that the trial court did not abuse its discretion in making its evidentiary rulings.

### E. Attorney Fees

 {51} Lastly, Agora challenges the award of attorney fees to G & G made by the trial court in the amount of $101,027.22 for prosecuting the action against it. Agora asserts the award was unreasonable and excessive. We review the grant or denial of attorney fees for an abuse of discretion. *See Buckingham v. Ryan,* 1998–NMCA–012, ¶ 23, 124 N.M. 498, 953 P.2d 33 (stating standard of review). Agora concedes that G & G is entitled to an award of attorney fees under the Unfair Trade Practices Act. *See* § 57–12–10(C) (providing for the award of attorney fees and costs "to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if he prevails."). Agora has not directed us to any evidence in the record to challenge the reasonableness of the fees requested. Agora's counsel did argue that the hourly fee of $175 should be reduced to $125; however, arguments of counsel are not evidence. *See In re Application of Metropolitan Inves., Inc.,* 110 N.M. 436, 441, 796 P.2d 1132, 1137 (Ct.App. 1990). On this record we cannot say that the trial court abused its discretion in its award of attorney fees.

### CONCLUSION

{52} We affirm, and we remand to the trial court for an award of reasonable attorney fees for G & G incident to this appeal.

{53} IT IS SO ORDERED.

PICKARD, C.J., and APODACA, J., concur.