This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                        **NO. 29,335**

**MARIO MANZANARES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. "Pat" Murdoch, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant Mario Manzanares was tried on charges of aggravated indecent exposure, contributing to the delinquency of a minor, and intimidation of a witness (bribery) following an incident in a park during which he allegedly exposed his penis to a fourteen-year-old girl, asked her to perform fellatio, then offered her money in exchange for her silence. He was convicted of bribery and found not guilty on the other charges. We affirm.

**BACKGROUND**

The charges associated with this appeal arose from an incident on November 7, 2005, in Albuquerque, New Mexico. On that date, Victim, then fourteen years old, went to Jerry Cline Park after school, approached Defendant, and asked him for a cigarette. A conversation ensued, during which Defendant told Victim he was twenty, married with two kids, and worked at a car dealership. Victim told Defendant that she was fifteen years old. As they were talking, Defendant rubbed Victim's back and leg. Then, according to Victim, Defendant requested oral sex and exposed his penis to her. Victim became scared, nervous, laughed, and refused Defendant's fellatio request. Defendant offered money in exchange for Victim's silence on the matter; Victim responded that she wanted $100. Defendant gave Victim approximately half of the

requested amount with a promise that he would give her the balance if they could meet again. Victim agreed to this, and the two exchanged phone numbers.

Following their meeting in the park, Victim called Defendant on the phone a number of times. And, although Victim does not recall sending a text to Defendant asking if they were "still on for lunch," Defendant's live-in girlfriend claimed it was in response to this message that she confronted Victim. On November 8, 2005, the girlfriend called Victim on the phone and told her not to call Defendant again.

On November 9, 2005, Victim reported the incident in the park to her teacher and to her school's resource officer, Albuquerque Police Department (APD) Detective Bowman. The matter was referred by Bowman to APD sex crimes Detective Roberts, who then met with Victim to investigate. During her interview with Detective Roberts, Victim gave a physical description of Defendant, along with Defendant's name and phone number. Part of Victim's description of Defendant was that he had "lots of tattoos." Victim described, in particular, a tattoo of a woman's face, from which Detective Roberts was able to match a photo of Defendant. Victim later identified Defendant from a photo array.

Defendant was indicted on charges of bribery of a witness, aggravated indecent exposure, and contributing to the delinquency of a minor. At a hearing on pretrial

motions, Defendant sought a ruling permitting him to admit evidence that Victim had made prior allegations of indecent exposure by other individuals on three or four separate occasions. The district court excluded the evidence based on the rape shield statute, NMSA 1978, § 30-9-16(A) (1993), which reads as follows:

> As a matter of substantive right, in prosecutions pursuant to the provisions of Sections 30-9-11 through 30-9-15 NMSA 1978, evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

The court explained that "[the rape shield law] relates to prior sexual conduct, whether it's voluntary or involuntary, so now it applies." Defendant further sought to introduce this evidence by arguing that Victim, having been exposed to penises during these prior incidents, should be able to testify to the "uniqueness" of Defendant's penis, that is, a visible implant. He also argued that these prior reports showed that Victim had a motive to lie about indecent exposure either to draw attention to herself or because " she knows what happens [to the persons accused] in instances where indecent exposure is alleged." The court ruled that defense counsel would be permitted to ask what exposure Victim has had to penises, and if she denied having any, defense counsel could pursue a line of questioning about the other alleged

4

exposures. If, however, she responded that she was familiar with what penises look like, counsel could not ask about the prior allegations.

A jury convicted Defendant of bribery and found him not guilty of aggravated indecent exposure and contributing to the delinquency of a minor. After the jury was dismissed, and before sentencing, Defendant filed a motion for a new trial, making many of the same arguments he now asserts on appeal. The court denied the motion without a hearing. Defendant appeals his conviction of bribery and makes the following six arguments: (1) the district court erred by not permitting him to confront Victim by examining her about prior reports of indecent exposure by other men; (2) the district court erred by permitting the State to present evidence regarding Defendant's tattoos; (3) the State failed to present sufficient evidence to sustain Defendant's conviction for bribery of a witness; (4) the jury was instructed in a confusing and misleading manner; (5) the district court erred by permitting the State to make improper arguments during its closing; and (6) the jury's verdicts were inconsistent. We affirm.

**DISCUSSION**

**Exclusion of Evidence of Victim's Prior Allegations of Indecent Exposure**

Defendant contends on appeal that the district court erred by excluding evidence of Victim's reports of indecent exposure by other men. His two-fold

argument is: (1) the fact that Victim made reports is outside the parameters of the rape shield law because the incidents of indecent exposure should not be characterized as Victim's past sexual conduct, but rather sexual conduct of the alleged offenders; and (2) the district court's ruling interfered with his Sixth Amendment right of confrontation.

**A.      Applicability of the Rape Shield Statute**

We review de novo Defendant's claim that the district court erred in applying the rape shield statute. *See Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P. 2d 1066 (stating that an "appellate court reviews [a] trial court's ruling on a question of law under a de novo standard").

Defendant argues that the alleged prior exposures by other men "[do] not fall within the plain language of the rape shield law, which refers to acts of the victim," in that the alleged acts are not those of the victim, but instead are acts of perpetrators. We disagree.  Sexual conduct does not have to be volitional to come within the purview of our rape shield statute.  This Court has previously held that "Section 30-9-16 applie[s] to all sexual conduct and that a prior rape was sexual conduct within the meaning of Section 30-9-16." *State v. Scott*, 113 N.M. 525, 530, 828 P.2d 958, 963 (Ct. App. 1991).  Thus, the district court's application of the rape shield law to

6

exclude evidence of Victim's prior reports of indecent exposure was in line with our case law.

**B.	Confrontation**

We review Defendant's Sixth Amendment confrontation claim for abuse of discretion. *See State v. Chambers*, 103 N.M. 784, 787, 714 P.2d 588, 591 (Ct. App. 1986) (reviewing for abuse of discretion the question of "whether the trial court's limitation on counsel's right of examination infringed on [the] defendant's right of confrontation"). In doing so, we recognize that

> [t]he trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination . . . . The Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish.

*State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) (alteration omitted) (internal quotation marks and citations omitted).

*State v. Johnson*, 1997-NMSC-036, 123 N.M. 640, 944 P.2d 869, provides the framework through which we analyze Defendant's argument. There, the New Mexico Supreme Court determined that when faced with a conflict between rape shield law on one hand and a defendant's Sixth Amendment constitutional right of confrontation on the other, a five-part balancing test applies to determine whether evidence of a victim's prior sexual history should be admitted. *Id.* ¶¶ 23, 28. The five factors to

8

consider for admission of evidence in the face of competing rape shield law and Confrontation Clause arguments are as follows:

> (1) whether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; (5) whether the probative value of the evidence outweighs its prejudicial effect.

*Id.* ¶ 27; *see State v. Stephen F.*, 2007-NMCA-025, ¶ 10, 141 N.M. 199, 152 P.3d 842 (stating that if the defendant shows "sufficient facts to support a particular theory of relevance," the court will then balance the probative value of the evidence against prejudice (internal quotation marks and citation omitted)), *aff'd*, 2008-NMSC-037, 144 N.M. 360, 188 P.3d 84.

Assuming that Victim's prior acts of reporting indecent exposure would have some degree of relevance on issues of Victim's credibility and motive to lie, and determining that the issue of confrontation is not moot because confrontation as to the reports, if discretion required it, may have had a material bearing on the bribery charge, we are unable to hold that the district court abused its discretion when it did not permit Defendant to start his examination of Victim with questions specifically regarding the reports. *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 ("An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court

9

abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)).

The court required Defendant to begin by asking about Victim's prior exposure to penises either in person or in pictures and to ask about the prior allegations only if she denied ever having seen a penis. Defendant chose not to pursue that course of examination. Allowing examination straight-on with respect to the incidents and reports in question could properly have been seen by the district court as substantially lacking in adequate foundation under the *Johnson* rape shield test. Defendant's showing, up to the point of wanting to examine Victim, consisted of no documentation, depended solely on oral interviews with scant factual background, and was not all that clear. We see no reasonable basis on which Defendant chose not to pursue the examination afforded by the court, and Defendant presents no such basis in his briefs on appeal. We fail to see how he can complain about confrontation error.

Further, while the circumstances of the prior allegations appear to have very generally resembled those in the present case, they were lacking in sufficient specificity to be persuasive for satisfaction of the resemblance factor. Additionally, although the evidence of the reports could reasonably be seen as minimally relevant, given that Defendant was found not guilty on the charges directly related to the act of indecent exposure, Defendant's manner of examination was not necessary to

Defendant's case. The court offered Defendant an alternative approach that would have satisfied his concerns. And, finally, the court could reasonably determine that the probative value of attempting the examination in the manner Defendant desired could have been thought to be outweighed by its prejudicial effect. "Determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court." *Id.* ¶ 48 (alteration omitted) (internal quotation marks and citation omitted). We will not override the district court's discretion under the circumstances of this case.

**Evidence of Defendant's Tattoos**

Defendant next argues that the district court abused its discretion by admitting evidence of his tattoos, on the basis that this evidence was irrelevant and prejudicial. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

We first examine whether the tattoos were relevant. The State asserts two grounds for relevance. First, the tattoos were relevant to identity. It was Victim's description of Defendant's tattoos, after their first encounter in the park, that led police to a photo of Defendant. Victim then identified Defendant from a photo array. Although Defendant was willing to stipulate that he and Victim had met, he was

unwilling to stipulate that their meeting occurred in the park on the day of the incident, thus making identity an issue. Second, the State argues that the tattoos were relevant to its theory that Defendant likes to show off his tattoos and, similarly, he likes to show off his penis implant. The fact that Defendant goes out of his way to show off his tattoos is evidenced by the following testimony by Robin King:

He is proud of the tattoos he has.

. . . .

He shows them often. . . . There's been a few times we've been out in public together, and we will be talking together to somebody and people will walk up to him, or if they have tattoos, he will walk up to them and start a conversation about his tattoos. There's been times he has tooken [sic] his sleeves down and shows people his work.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11-401 NMRA. "Any doubt whether the evidence is relevant should be resolved in favor of admissibility." *State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845. Based on the foregoing, we hold that evidence of Defendant's tattoos was relevant to prove identity and to provide support to the State's theory of the case.

Having determined the evidence of Defendant's tattoos was relevant, we examine whether it was unfairly prejudicial to Defendant. All relevant evidence is

admissible, excepting circumstances under which its probative value is substantially outweighed by the danger of unfair prejudice. Rules 11-402, 11-403 NMRA. Defendant argues that evidence of his tattoos should not have been admitted because it was prejudicial in that it might suggest to the jury that he had a criminal history or gang affiliation. In support of this assertion, Defendant directs us to the only authority he provides on this point, *State v. Contreras*, 2007-NMCA-045, ¶¶ 25-27, 141 N.M. 434, 156 P.3d 725, which is distinguishable from this case. In *Contreras*, a defendant appealed the district court's denial of his motion for mistrial. His argument was that his mug shot, which was admitted into evidence, and his pen packet, which was discussed at trial, "were unfairly prejudicial because it suggested to the jury that, because he had a prior conviction, he was likely to be guilty in the present case." *Id.* ¶ 25. This Court recognized that the mug shot and pen packet were prejudicial to the defendant, yet affirmed the decision of the district court because the evidence was being used for the highly probative purpose of rebutting a defense of mistaken identity. *Id.* ¶ 27.

Here, unlike the facts in *Contreras*, Defendant's booking photo was specifically excluded from evidence, as was any reference to Defendant's criminal or gang-related history. At trial, Detective Roberts testified that he was assigned to the Criminal Investigations Bureau, Juvenile Section, Child Exploitation Bureau and had been in

the same unit for ten years. He explained that he gathered information from Victim, including a physical description of Defendant, which included multiple tattoos on his chest and down both arms. Based on this description, Roberts testified, "through another means I did come in possession of a photograph taken of [Defendant] that was provided to me without his shirt on, and it was multiple tattoos across the chest and arms, including the face of a woman on his right upper arm." Detective Roberts did not allude to gangs, nor did he mention Defendant's booking photo.

"Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence that tends to suggest decision on an improper basis." *State v. Anderson*, 118 N.M. 284, 302, 881 P.2d 29, 47 (1994). In the present case, the evidence of Defendant's tattoos was relevant to Defendant's identity as the man Victim encountered at Jerry Cline Park and later described for investigators. Even assuming the jurors might have inferred that Defendant had a criminal history, we think it is unlikely that they convicted him of bribery on this basis, when operating under the same inference they found Defendant not guilty of contributing to the delinquency of a minor and aggravated indecent exposure. On this basis, we determine that the probative value of evidence of Defendant's tattoos was not outweighed by unfair prejudice to Defendant.

14

**Sufficiency of the Evidence**

Defendant's next claim on appeal is that the State failed to provide sufficient evidence to support a conviction for bribery. The basis of Defendant's claim is that the jury found him not guilty of contributing to the delinquency of a minor. Contributing to the delinquency of a minor required the jury to find that Defendant asked Victim to perform fellatio, and the bribery charge stemmed from Defendant offering Victim money to keep quiet about this request. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

At trial, Victim testified that Defendant asked her for oral sex, she refused, and he offered her money in exchange for her silence. This evidence is sufficient to support the jury's determination that Defendant committed bribery of Victim. The fact that Defendant was found not guilty of the related charge does not warrant reversal of the bribery conviction. *See State v. Perea*, 1999-NMCA-138, ¶ 7, 128 N.M. 263, 992 P.2d 276 (recognizing that "a defendant may be convicted of bribery or intimidation of [a] witness even if the defendant is acquitted of any crime

15

associated with the actions relating to the commission or possible commission of a felony" (internal quotation marks and citation omitted)).

**Propriety of the Jury Instructions**

Defendant argues that the jury instruction on bribery was confusing and misleading. Defendant concedes that this argument is raised for the first time on appeal, and he requests that we review for fundamental error.

> The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error. Under both standards[,] we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction.

*State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted).

The jury was instructed as follows:

> For you to find . . . [D]efendant guilty of intimidation of a witness as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. . . . [D]efendant knowingly gave money or offered to give money with the intent to keep [Victim] from truthfully reporting to a law enforcement officer or any agency that is responsible for enforcing criminal laws information relating to: the commission or possible commission of [c]ontributing to the [d]elinquency of a [m]inor;
>
> 2. This happened in New Mexico on or about the 7th day of November, 2005.

16

This instruction is identical to UJI 14-2403 NMRA. Defendant does not explain why the UJI is confusing and misleading or why we should refuse to accept it. *See State v. Caldwell*, 2008-NMCA-049, ¶ 25, 143 N.M. 792, 182 P.3d 775 (holding that where a jury instruction "does not differ from the uniform jury instruction in any material way," there is "no basis for holding that fundamental error exists"). We see no basis on which to determine that fundamental error exists.

**The State's Closing Argument**

On appeal, Defendant argues that the district court erred by permitting the State to make "improper arguments" during its closing argument. Specifically, Defendant points to the State's characterization of him as a showoff, and the argument that he is proud of his penis implant, which "he uses as a lure with the women that he approaches," just as he is proud of his tattoos that he shows to strangers. We review this claim for abuse of discretion. *See State v. Chamberlain*, 112 N.M. 723, 729, 819 P.2d 673, 679 (1991) ("The prosecution is allowed reasonable latitude in closing argument. The district court has wide discretion to control closing argument, and there is no error absent an abuse of discretion or prejudice to [the] defendant." (citation omitted)).

Our Supreme Court has identified three factors that are key to the determination of appeals centered on improper comments during closing argument.

17

> (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense. In applying these factors, the statements must be evaluated objectively in the context of the prosecutor's broader argument and the trial as a whole.

*State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348.

In applying these factors to the instant case, we hold there has been no abuse of discretion. First, the statement did not center on a distinct constitutional protection. Rather, it was based on a permissible inference drawn from the evidence. *See State v. Anaya*, 79 N.M. 43, 46-47, 439 P.2d 561, 564-65 (Ct. App. 1968) (stating that "[i]t is within the range of legitimate argument for counsel to discuss all inferences which may be drawn from the evidence"). Next, when viewed in the context of the State's entire closing argument, the statement is isolated and brief. In fact, it is nine lines of a transcribed closing argument that is several pages long and covers several other points. Finally, in regard to the third factor, the comments at issue were based on inferences drawn from testimony by Defendant's live-in girlfriend, who was a witness for the defense. During redirect examination, defense counsel asked a series of questions which prompted the witness to relay comments about Defendant showing his tattoos to strangers. Thus, but for defense counsel's questions of its own witness on this topic, the information that led to the State's inference, that Defendant is a

showoff, would not have been available. We therefore reject Defendant's challenge to the State's closing argument.

**Inconsistent Verdicts**

Defendant's final argument on appeal is that his conviction was improper due to inconsistent jury verdicts. We do not consider this argument because Defendant failed to preserve this issue for appeal. *See G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 41, 128 N.M. 434, 993 P.2d 751 (holding that "[a] litigant who fails to object to an alleged inconsistency in a jury's verdict before the jury is dismissed may be held to have waived any further challenge to the alleged inconsistency"). Moreover, even if Defendant had preserved this argument for appeal, it provides no basis for reversal. *See Perea*, 1999-NMCA-138, ¶ 7 (recognizing that "a defendant may be convicted of bribery or intimidation of [a] witness even if the defendant is acquitted of any crime associated with the actions relating to the commission or possible commission of a felony" (internal quotation marks omitted)).

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**ROBERT E. ROBLES, Judge**