1998-NMCA-012

953 P.2d 33

**Caye C. BUCKINGHAM, Plaintiff–Appellant,**

v.

**James RYAN, Defendant–Appellee.**

**Nos. 17829, 17998.**

Court of Appeals of New Mexico.

Dec. 17, 1997.

Maria Garcia Geer, Geer, Wissel & Levy, P.A., Albuquerque, for plaintiff-appellant.

Michael E. Knight, Knight & Nagel, P.A., Albuquerque, for defendant-appellee.

## OPINION

PICKARD, Judge.

¶ 1 This case requires us to consider the appropriate relief when a seller wishes to declare forfeiture of a large down payment upon default of a real estate contract. Caye Buckingham (Buyer) sued James Ryan (Seller) for damages resulting from the default and forfeiture of her interest in a real estate contract. Seller counterclaimed seeking attorney fees and damages for breach of contract. Judgment was entered in favor of Seller. On appeal, Buyer presents five issues: (1) whether retention of the down payment under these circumstances is unconscionable; (2) whether allowing Seller to terminate her rights to the property as well as awarding Seller contract damages is double recovery; (3) whether substantial evidence supported the trial court's award of damages to Seller; (4) whether Seller mitigated his damages; and (5) whether the award of attorney fees must be reduced because Buyer withdrew a claim pertaining to the Unfair Practices Act prior to trial. We affirm on issues one and five and reverse on issue two. Because we reverse on issue two, it is unnecessary to reach the remaining issues.

## BACKGROUND

¶ 2 In September 1993, Buyer entered into a real estate contract with Seller to purchase a six-unit apartment complex in Albuquerque. Buyer bought the complex for $107,000 and made a $25,000 down payment at the time of closing. The contract called for Buyer to make $700 monthly payments due on the first of each month to pay off the balance of the purchase price. Payments were to be made to an escrow agent. At the time of the sale, Buyer arranged to make three payments in advance.

¶ 3 In January 1994, Buyer was experiencing financial difficulty and was unable to timely pay the January 1st payment. Buyer called Seller to inform him about her situation. Seller was disturbed to discover that Buyer would not make the payment and informed Buyer that he needed it and that he relied upon the payments to support himself. Buyer responded that she would make the payments when she could. Upon Seller's insistence that she pay, Buyer promised to make the January payment on the 15th; Buyer did not make the payment on that date. Thereafter, Buyer paid the January and February payments on February 1st. On March 1st, only one month later, Buyer's agent was late in making the payment. Seller had his attorney mail Buyer a notice of default on March 7th.

¶ 4 The contract in this case permitted Buyer to cure the default by tendering the monthly payment along with $81.65 for attorney fees within thirty days after the date notice of default was mailed. On March 15th, Buyer's agent mailed a $700 check to the escrow agent. The escrow agent refused to accept the check because it was only made

out for $700 and not $781.65—the total amount due. The check was returned to Buyer. By this time, Buyer had received the notice of default which informed her that $781.65 was due by April 6th. Buyer thereafter tendered a check for $700 along with a new check for $81.65. However, these checks were not sent until April 8th, two days after the date of default.

¶ 5 Upon default, Seller elected to terminate Buyer's rights in the property and to retain the $25,000 down payment as liquidated damages for use of the property. Three days after terminating the real estate contract, Seller sold the property for $85,000.

¶ 6 Buyer filed suit in district court alleging unjust enrichment, unconscionable trade practices, breach of warranty, and negligent misrepresentation. Seller filed a counterclaim for breach of contract and for attorney fees under the Unfair Practices Act. Seller was awarded $18,704 in damages for the breach of contract counterclaim and $494 for attorney fees, and Seller was also allowed to keep $28,500 consisting of the down payment plus $3,500 in monthly payments.

## DISCUSSION

### I.  The Forfeiture

¶ 7 The real estate contract between Buyer and Seller allowed Seller, upon default, to terminate the contract, regain possession of the property and retain all payments made prior to default as liquidated damages. Forfeiture provisions of this type are generally enforceable in New Mexico. *Russell v. Richards,* 103 N.M. 48, 50, 702 P.2d 993, 995 (1985). The literal terms of this type of forfeiture provision, however, will not be enforced when to do so would result in an unwarranted forfeiture or in unfairness which would shock the conscience of the court. *Id.; see also Manzano Indus., Inc. v. Mathis,* 101 N.M. 104, 105, 678 P.2d 1179, 1180 (1984); *Huckins v. Ritter,* 99 N.M. 560, 562, 661 P.2d 52, 54 (1983); *Eiferle v. Toppino,* 90 N.M. 469, 470, 565 P.2d 340, 341 (1977). Our Supreme Court has previously held that not every case of default presents circumstances which shock the court's conscience. *Russell,* 103 N.M. at 50, 702 P.2d at 995. To determine whether a forfeiture shocks the conscience the following equitable

factors are considered: the amount of money already paid by the buyer to the seller; the period of possession of the real property by the buyer; the market value of the real property at the time of default compared to the original sale price; and the rental potential and value of the real property. *Id.*

¶ 8 Buyer contends that the facts surrounding forfeiture in this case result in an unfairness which should render the forfeiture provisions of the contract unenforceable. We disagree. The "[d]etermination of whether a forfeiture provision of a real estate contract should be enforced is a matter within the sound discretion of the trial court." *Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 102, 654 P.2d 548, 555 (1982). Discretion was not abused in this case because there was substantial evidence to support the trial court's decision to enforce the forfeiture provision of the contract.

¶ 9 In this case, Buyer was in possession of the property for seven months and paid a total of $28,500 to the Seller over that period—a $25,000 down payment and $3,500 in monthly payments. Buyer argues that the large down payment in this case should render forfeiture unconscionable. We refuse to hold that the forfeiture of a large down payment will shock the conscience of the court in every case. *Manzano Indus., Inc.,* 101 N.M. at 105, 678 P.2d at 1180. The amount of the forfeited down payment is only one factor to be considered by the trial court. *Id.*

¶ 10 Additionally, during Buyer's period of possession, she had the opportunity to collect $13,680 in rent. Seller testified that while he possessed the premises, there were not more than two vacancies. Furthermore, Seller was able to fill the vacancies within a day of advertising. Also, at the time Buyer bought the apartments, it appeared that tenants occupied many of the units. We are aware that there is a conflict in the testimony whether or not the units were habitable and capable of being rented out. However, when there is a conflict in the testimony, we defer to the trier of fact. *See State v. Roybal,* 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992) ("It was for the trial

court as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay."); *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 476, 697 P.2d 156, 159 (Ct.App.1985) ("It is for the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies.").

¶ 11 Moreover, another equitable factor that weighs in favor of affirming the forfeiture is that the value of the premises decreased significantly while Buyer was in possession. Upon taking repossession, Seller testified that he found the property littered with trash and covered with overgrown weeds, graffiti on the building, asphalt missing from the parking lot, doors that were off their hinges, a broken fence, and hypodermic needles and broken beer bottles on the ground. As to the interior of the building, Seller found trash on the floors, carpeting badly soiled, a refrigerator reeking of spoiled food, strong terrible odors emanating from some of the sinks, and two units occupied by non-paying tenants. Seller testified that he had no choice but to seek a lower price upon resale because of the condition of the property.

¶ 12 Furthermore, Buyer was aware of the contract's default provisions which required her to tender a payment of $781.65 upon receiving notice of default and the consequences if she failed to timely make payment. Buyer also received a copy of the default notice which reiterated the amount due and the consequences of default. Nevertheless, Buyer urges us to conclude that the escrow agent's rejection of the initial $700 payment because $81.65 for attorney fees had not also been submitted renders forfeiture unfair. Buyer ignores the contractual provision that she agreed to which provides that "[t]he Escrow Agent is instructed that after each and every written demand is mailed to the [Buyer] ... not to accept less than the full amount of the sum state[d] as due in the written demand, plus the additional $81.65, unless otherwise stated, for ... attorney[ ] fees." The default notice also stated that the escrow agent was instructed not to accept less than $781.65. We conclude

that Buyer was aware that nothing less than full payment, including attorney fees, would be accepted by the escrow agent. *See Russell*, 103 N.M. at 50, 702 P.2d at 995 ("parties to a real estate contract ... agree to be bound by its terms and provisions, and to accept the burdens of the contract together with its benefits.").

¶ 13 Finally, Buyer refers to *Eiferle*, 90 N.M. at 470, 565 P.2d at 341, and *Huckins*, 99 N.M. at 562, 661 P.2d at 54, for the proposition that retention of a large down payment following failure to cure a default is unconscionable. Both *Eiferle* and *Huckins* are distinguishable. In *Eiferle*, buyers were given until March 31st to tender full payment and cure the default. *Id.* at 470, 565 P.2d at 341. Nevertheless, on March 28th the seller's attorney wrote the buyers a letter demanding payment. *Id.* Thereafter, the escrow agent refused the buyers' payment because they did not include $25.00 to cover attorney fees for writing the demand letter. *Id.* The Supreme Court held that the seller's mailing of a demand letter was premature and of no effect because the buyers had additional time in which to cure default. *Id.* This is not the case here. Seller's default notice was not premature and was effective as Seller was within his rights to demand payment.

¶ 14 Buyer's reliance on *Huckins* is similarly misplaced. In *Huckins*, the Court found that retention of a down payment which was almost one-third the amount of purchase price, along with the buyer's short period of possession, constituted an unwarranted forfeiture. *Id.* at 562, 661 P.2d at 54. Although this case is similar to *Huckins* in that Buyer also paid a large down payment and was in possession of the property for a short period of time, we conclude that reliance on *Huckins* is unwarranted. Unlike *Huckins*, the property in this case decreased in its market value during Buyer's possession. *See id.* Furthermore, Buyer was twice late in making payments within a very short period of time.

¶ 15 In January 1993, when Buyer's first regular payment was due, she informed Seller that she was experiencing financial difficulties. Buyer claims she told Seller that

her financial problems would not interfere in her ability to meet her obligations. However, Buyer then contradicted herself by stating that she was unable to timely make the January payment. When Seller protested that Buyer's behavior was unprofessional and unfair, Buyer relented and promised to make the payment on January 15th. When Seller contacted the escrow company on the 15th to find out whether Buyer had made the payment, he was informed that she had come in and paid on another account, but had not paid Seller's account. Buyer's casual attitude about meeting her obligations could hardly have inspired Seller's confidence in Buyer. Substantial evidence therefore supports the notions that Seller was justified in sending notice of default to Buyer based upon her continued delinquency in making payments, and that Seller was justified in electing to forfeit the contract.

¶ 16 We affirm the trial court's decision that forfeiture was not unconscionable, and we also hold that the trial court did not abuse its discretion in denying equitable relief to Buyer.

II. Election of Remedies

■ ¶ 17 The real estate contract allowed Seller, upon default, to either declare the remaining balance due, thus accelerating payment, or to terminate Buyer's interests in the property and retain all payments made up to that date as liquidated damages. Seller elected to terminate Buyer's interest and retain the $25,000 down payment plus $3,500 in monthly payments. At trial, Seller counterclaimed against Buyer for breach of contract and was awarded $18,704 in damages. Buyer argues that it was improper for the court to award damages because Seller, having elected to repossess the property and retain amounts previously paid, was not entitled to the additional remedy of damages. We agree.

■ ¶ 18 At common law, when a buyer defaults on a contract for the sale of land, and the seller repossesses the property, this "constitutes an election of remedies and amounts to a rescission of the contract, precluding further recovery from the buyer." *Graham v. Stoneham,* 73 N.M. 382, 385, 388

P.2d 389, 391 (1963); *see also Armstrong v. Csurilla,* 112 N.M. 579, 586, 817 P.2d 1221, 1228 (1991) (agreeing that upon default in a contract for the sale of land, the seller may not accelerate the balance due on the contract and sue for payment as well as repossessing the property and retaining amounts previously paid as liquidated damages); *Davies v.. Boyd,* 73 N.M. 85, 88–89, 385 P.2d 950, 952 (1963) (stating that upon default, sellers may not recover for an unpaid part of the purchase price where they have previously declared forfeiture and elected to rescind the contract).

¶ 19 Once he chose forfeiture, Seller elected his remedy and he may not also recover on a breach of contract action that would give him the benefit of the bargain or his expectancy. *See Abodeely v. Cavras,* 221 N.W.2d 494, 498 (Iowa 1974) (after forfeiture "the vendor cannot . . . thereafter change his position and . . . proceed on a theory based on affirmance by suing for damages for breach of the contract or for specific performance since one is precluded from pursuing inconsistent remedies"); *Rowland v. Finkel,* 33 Ohio App.3d 77, 514 N.E.2d 949, 951 (1987) ("There is simply no basis in law or fact for this judgment which both allows a recovery for the purchase price and at the same time returns title to the vendor.").

¶ 20 Seller concedes that he could either accelerate the contract or terminate the contract and retain all amounts previously paid as liquidated damages for use of the property. Seller contends that the word "use" should not be broadly interpreted to encompass abuse, waste, and damage to the property. Thus, Seller concludes, the trial court did not award him expectancy damages, but rather the trial court awarded him damages for waste to the property. There are many flaws in Seller's reasoning.

¶ 21 First, even if "use" is defined as Seller suggests, the contract provides that Seller can only retain amounts previously paid; he cannot sue for additional recovery. Moreover, in his closing argument, Seller stated that he was "entitled to the benefit of his bargain with [Buyer]." Seller explained that he anticipated earning approximately $141,000 on the contract with Buyer. After Buyer's default and the subsequent sale of

the property for a lesser amount, Seller claimed that he experienced losses totaling $18,704—the amount awarded by the trial court. Clearly, Seller was seeking damages to compensate him for his lost profits—his expectancy interest under the contract. Indeed, the damages awarded to Seller, as explained by the trial court in its conclusions of law, were to allow Seller to "recover those amounts he would reasonably have gained absent a breach."

¶ 22 Because as a matter of law Seller is prohibited from recovering both the land and his expectancy damages, we reverse the trial court. *See Ledbetter v. Webb*, 103 N.M. 597, 602–03, 711 P.2d 874, 879–80 (1985) (an appellate court is not bound by a trial court's erroneous conclusion of law). Since we conclude that the trial court erred in awarding Seller damages and allowing him to repossess the property, it is unnecessary to reach issues three and four.

### III. Attorney Fees

¶ 23 The trial court awarded Seller his attorney fees in the amount of $494, which relates to the amount of time that Seller's attorney spent defending him against Buyer's claim brought under the Unfair Practices Act (UPA). NMSA 1978, §§ 57–12–1 to –22 (1967, as amended trough 1995). Buyer argues that the trial court abused its discretion in awarding this amount. *Lenz v. Chalamidas*, 113 N.M. 17, 18, 821 P.2d 355, 356 (1991) ("Award of attorney fees rests in the discretion of the trial court and this court will not alter the fee award absent an abuse of discretion."); *In re Estate of Gardner*, 114 N.M. 793, 804, 845 P.2d 1247, 1258 (Ct.App. 1992) (stating that the award of attorney fees is reviewed for abuse of discretion).

¶ 24 The UPA, Section 57–12–10(C), allows a defending party to recover its attorney fees if the party complaining of an unfair trade practice has brought a meritless claim. Buyer, however, claims that she withdrew the UPA claim prior to trial and therefore is not liable for the 1.6 hours of work which were provided by Seller's attorney after the claim was withdrawn. Seller responds that Buyer's withdrawal was ineffective to dismiss the claim. *See* Rule 1–041, NMRA 1997.

¶ 25 There was quite a bit of confusion about whether Buyer's withdrawal was an effective dismissal of the claim. Buyer's failure to use appropriate language to dismiss the claim confused both counsel and the trial court. The trial court was unsure what Buyer accomplished by seeking a "withdrawal." Furthermore, Seller's counsel was under the impression that the claim had not been dismissed with prejudice and proceeded to defend Seller against that claim. Therefore, we conclude that Buyer is liable for the 1.6 hours of work Seller's counsel put in to defend against the UPA claim. We also hold that the amount of work, 1.6 hours, is not an unreasonable amount of time and that the trial court did not abuse its discretion in awarding this fee.

¶ 26 As to Seller's request that he be awarded attorney fees on appeal we note that "absent statutory or other authority, litigants are responsible for their own attorney[ ] fees." *Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990). Since there is no statute permitting the award of attorney fees applicable to this appeal, we look to the parties' contract to determine whether Seller is entitled to his fees. The contract provides that if Seller elects to accelerate payment of the contract he may recover "the entire remaining balance, plus any accrued interest, together with reasonable attorney[ ] fees, *or* he may terminate [Buyer's] rights to the Property and retain all sums paid as liquidated damages to that date for the use of the Property." (Emphasis added.) Because Seller elected forfeiture, this remedy does not entitle him to recover his attorney fees. Thus, we hold that the parties are responsible for their own attorney fees on appeal.

### CONCLUSION

¶ 27 We affirm the trial court as to the forfeiture and the award of attorney fees under the UPA. We reverse the trial court as to the recovery of contract damages, and we deny Seller's request for attorney fees on appeal.

¶ 28 **IT IS SO ORDERED.**

APODACA and ARMIJO, JJ., concur.